David C. Smith, Council for Appley. Bernard Ancheta Carbonell. All right, good morning. Mr. Goodstein, would you like to reserve any time? Yes, I'd like to reserve about four minutes, please. Four minutes. All right. Thank you. And could you speak up into the microphone so we can hear you clearly? Is that better? Yes. The closer you get, the better it is. Okay. Well, good morning, and may it please the Court. I'm Seth Goodstein on behalf of Next Level Properties, the appellant in this matter. This is a post-foreclosure bankruptcy petition that intervened between a valid and unchallenged trustee's foreclosure sale where the appellant was a successful bidder and the delivery and recording of the acknowledged trustee's deed. This is actually a recurring fact pattern, and the appellant asked the Court to apply de novo review of the application of state law to the requested relief from stay for cause. In this case, the parties have identified seven cases applying Washington law to post-foreclosure petitions. For varying reasons, four of these cases have upheld the sale and three did not. As the Bankruptcy Court noted below, the decisions on post-foreclosure relief from stay vary in outcome in the Western District of Washington, and the Court may be wondering why this case is of the type that warrants relief from stay, and I'd like to answer that question at the outset. The appellant points out overreliance on the plain meaning of RCW 61-24-050 introductory languages, and we pinpoint Pacific Reporter pages 886 through 887 in the Udall State Supreme Court case entitled The Plain Meaning of RCW 61-24-050. In that subsection, the Supreme Court of Washington considered the introductory clause of 61-24-050, which is the clause that provides the property is conveyed upon delivery of the acknowledged deed. The State Supreme Court states that according to the plain meaning of this sentence, a person acquires no rights to the property sold by nonjudicial foreclosure until the deed is delivered. Thus, the foreclosure sale itself, including the acceptance of an auction bid without delivery of the trustee's deed, conveys no property rights under the act. The Supreme Court immediately goes on to say that this interpretation is not plausible. It rejected that interpretation and reversed the lower court holding, adhering to that plain meaning. The correct interpretation of 61-24-050 is that upon the acceptance of a trustee's bid, the sale is final, subject only to procedural irregularities in the sale itself. At the time of the Udall opinion, there were decisional irregularities. Later on, more irregularities, actually three irregularities. I'm not sure that Udall says, you know, finality is basically on the drop of the gavel, which is what you said. I think that's what you're saying Udall says, right? That once the sale concludes and there's no procedural abnormalities, it's final. Is that right? Well, yes. Let me ask the question differently. What I'm trying to figure out is, you know, you filed a motion for relief from stay. You have to have a colorable claim in order for relief from stay to be granted. You know, what is your client's colorable claim that would require relief from stay to be granted? You know, what is your client's interest in the property pre-possibly execution and delivery of the deed? Because the bankruptcy was filed and cut off those two events, right? Well, it stayed those two events, yes. The interest is having the deed delivered. It's mandatory language in RCW 6124. Let me ask you this. Does your client have any ownership interest, any interest, you know, in the property when you're seeking relief from the stay? What's the interest that your client has in that property? Well, I think that the bankruptcy court found standing, at least, on the basis that my client has a pecuniary interest in the property, having been the successful bidder at the trustee's sale. And our position is that barring any procedural irregularities, which there were none in this case, we're entitled to receive our deed subject to the judge's authority. What I think the judge is asking is, and I'm trying to help make this clear to you because we're not getting what we'd hoped for, and that is what did the buyer obtain when the sale was concluded but before the deed was provided? What rights did they get? Did they have possessory rights? Do they have title? Do they have other kinds of legal rights? So what in the bundle of rights did they obtain, if any, without the delivery and the recording of the deed? That's what we're asking. I believe they received equitable title with the ability for the title to relate back to the date of the sale once the bankruptcy issues are resolved. So what you're saying is the prior owner had basically burial legal title when they filed the bankruptcy? That is our position, and it's taken from the Nelson case cited in our materials. Okay, now the Nelson case, though, the Nelson case I don't think is on point, is it? The Nelson case, the deed was entered. There was no bankruptcy. There was no stay in place. So the sale was completed. The Nelson case was dismissed. After the case was dismissed, the deed was entered. There was no bankruptcy stay at the time. Is that right? I don't agree with that for a couple of reasons. When in the Nelson case did the case get dismissed? It was dismissed. There was no case pending when they recorded the deed. There was no automatic stay. That's true, but I don't think it matters because in the Nelson case the court states that it was unclear when the deed was delivered, and that's the conveyance. But then the court assumed in its analysis that the acknowledgement, which certainly occurred during the stay, the delivery and recording of the deed, were all void in violation of the stay and proceeded through the analysis from the standpoint that none of those things had occurred. The only thing that occurred in the Nelson analysis is exactly what happened here. There was a sale and a post-foreclosure bankruptcy petition before the sale could be finalized. Well, let's look at Judge Lynch's case that was affirmed in the Fairbanks appeal. In that case, dealing with the bushel basket of sticks, the court concluded and affirmed in most parts the decision of Judge Lynch to deny the party's ability to post-petition grant a or issue a deed. And, you know, so isn't the Fairbanks case closer here? In most respects, Judge Lynch was affirmed. Well, no. In Fairbanks, as I stated in our materials, I think that that case was badly handled from the outset. What happened in that case is that the mortgage trustee ignored, for a period of days, actual notice of a bankruptcy filing, went ahead and issued a deed and delivered it in violation of the stay and then hung their hat on the 15-day period in 6124.050 to sanitize those actions. Because they did them, it related back. The court found that that was not grounds to annul the stay. That was not a surprise. I think that that mortgage trustee violated a number of procedural guidelines that have been set out in the Western District of Washington and accepted by the practitioners. But the court did, despite that misconduct, actually reverse for a hearing on relief from stay. And another important distinction... But as to dealing with the annulment, if Ms. Fairbanks had no interest in the property because the highest bid was accepted, then the stay should have been annulled because you wouldn't even have to deal with it because there would be no stay. To annul the stay is to basically acknowledge that there was a stay because the debtor had some property rights. Well, I agree. And I think that there are legitimate purposes that could be served by a post-foreclosure bankruptcy petition, such as the petition could conceivably provide a forum for the debtor to litigate legitimate grievances with the conduct of the sale under an adversary proceeding. And that was actually handled in the Bell case that's cited in the materials. Also, it is beyond dispute that my client would need to seek relief from stay to evict a post-foreclosure occupant because post-foreclosure occupancy is not a leasehold forfeiture that can proceed as an exception under 362. So it's not a doomed bankruptcy. I do believe that the stay serves a purpose in these cases. But the facts of this case were that the sale was unchallenged, and it was a valid sale, and the trustee is not going to exercise discretion to overturn the sale and wants to issue the deed once these bankruptcy issues have been resolved. So the bankruptcy judge didn't have discretion is what you're arguing? We're arguing, yes. But didn't, in the Fairbanks case, this panel send it back to say that the judge has discretion to look at the relief from stay, and the part that was remanded was to look at the relief from stay issue? Well, in that case, we don't know if we had a challenge to the trustee's sale or the conduct of the sale. That was remanded. That's correct. We had no findings that were specific to the relief from stay in the Fairbanks case, which I was on that panel. You know, the annulment of the stay was an abuse of discretion standard. We could not find that the judge abused his discretion, and we sent it back because he didn't make findings specific to relief from stay. So we don't know what findings he ultimately made. But you're within your four minutes, so I'm not sure. Do you want to keep going, or do you want to reserve time? I'll reserve time unless the Court has more questions. Do you want to ask any more questions? No. Okay. Okay. Mr. Smith, please proceed. Good morning, Your Honors. I represent Mr. Carbonell in this matter. And I see the – I think there's a lot of – we've been talking a lot about the Fairbanks case, and I've cited that in my briefing. And one of the things that – in the Fairbanks case, one of the things that the Court said, the bankruptcy appellate counsel – Counsel, I'd prefer, if you would, to really address Udall. Because I think the state law is more important than how the bankruptcy court has interpreted state law. Fair enough. Let me just get that organized here. So the Udall case – I know it's not a bankruptcy case, so don't tell me that there was no bankruptcy stay involved. What I'm concerned about is the language that the Court used to interpret the specific provision that indicated that the deed transmission was a ministerial act. What does that mean? Well, I think what's important about Udall is Udall says that the trustees will sell the property at auction, but that all title – right title and interest of the property is conveyed when the deed is executed and delivered to the buyer. And that did not happen in this case. But it didn't happen in Udall either. I know. Udall was – No, I mean, the point I'm trying to make is in Udall there was no delivery, and yet at the end of the day the Court determined that the buyer who didn't ever receive the deed was entitled to clear title of the property irrespective of the execution and delivery by the trustee who refused to give the deed. Well, first off, Udall, of course, is a non-bankruptcy case, and the trustee, you're right, refused to give the deed. But in Udall, I think that – Let me ask you this. I'm not really understanding the question. I'm sorry that I don't understand. Let me ask you this way. Because Udall – In Udall there was a sale that was conducted and it was completed. In this case there was a sale that was conducted and it was completed. In Udall there was no challenge to the idea that there was an irregularity in the sale that would have given rise to some litigation that was pending that would have invalidated the sale. In this case there's no litigation that's pending that gives rise to anything that would – the only distinction here is that there was a bankruptcy that intervened before delivery. Everything else about Udall is the same as this case, which is there was a sale. It was conducted and there was no delivery of the deed. In one case it was because the trustee refused. In this case it's because there was a stay in effect. How are they distinguishable then? So Udall was cited extensively in the Fairbanks case, and the Fairbanks case mirrors this case. In Fairbanks the bankruptcy was filed a few days after the sale was called, and in Fairbanks the bankruptcy appellate panel agreed with Judge Lynch that that transfer – that the transfer didn't occur, that the buyer didn't have any rights to the property at the moment in time when the bankruptcy was filed. The intervening bankruptcy is what changes that. And so in Fairbanks – No, bankruptcy changes state law rights. Is that what you're saying? No, I'm saying that bankruptcy – It stays. It creates the automatic stay, and then after that, then the parties can then – like the buyer, for example, can bring claims such as adversary proceedings, negotiation with the debtor, or ask the court to – or object to the plan of reorganization to the extent that they become a creditor in that bankruptcy relating to the property transfer. But the Udall case was, I think – I'm sorry that I don't recall all the specific facts in the Udall case. Let me ask you this. Who in Udall was making the claim? I believe it was the – it was a dispute between the – I think it was the trustee. Well, it was – the trustee didn't want to deliver the deed because there was an error in the bid amount, and it was between the trustee and lender versus the buyer. The homeowner, the property owner, wasn't involved in that triangle transaction. Yes. Now I recall that, yes. And so because in that case the trustee was bringing that claim regarding some error that existed, the court eventually ordered that there be a transfer. But in Udall, they did – the court set out the standard regarding the statute and the transfer of the deed and that the transfer of the deed completes the foreclosure sale. That's just what the law is in Washington State in regard to that. So, counsel, it appears from Udall that the only impediments to the transfer that Udall identified were a pre-sale bankruptcy or litigation that would have involved some claim that there was either a procedural error or that the debt wasn't in default, that something wasn't owed, those kinds of litigations that you can file that were apparent in Cox, for instance. Yes. Those kinds of things didn't occur in this case before the gavel, the hammer went down, before the sale was concluded, right? That's correct. And pre-sale bankruptcy is different than post-sale bankruptcy, right? I mean, in other words, when they identified pre-sale, they meant if you file before any rights are engaged, any transfer, any hammer is involved in the process. When I use the word hammer, I mean any sale was involved in the process. That's what they're talking about. They're not talking about something that occurs after that's concluded because, again, they're saying it's a ministerial act. The deed has to be conveyed. Then you're arguing against Udall, which Udall says that the foreclosure is completed when the physical deed is signed and is physically transferred to the buyer. That's when the transfer of the property actually occurs. That's not true, though. That's not true because that's what the Court of Appeals held. What the Court of Appeals held is when delivered to the purchaser, that is when the rights are transferred. And they said that interpretation, Udall, is not plausible when you read the statute in conjunction with the rest of the act. They rejected that argument. Udall Court stated that the trustee sells the property at auction, the purchaser pays the price bid, and the trustee executes the deed to the purchaser, at which time all of the right title and interest in the property is conveyed. That's what Udall said. But it says right at paragraph 13, when delivered to the purchaser, conditioned on the purchaser's acquisition of title  The sale is final, they said, without the deed being conveyed. But that's the magic language, upon delivery of the trustee's deed. And Udall, that's what they were struggling with in Udall, I guess. But the bottom line is that in this case, the bankruptcy was filed. But if they never got the deed in Udall, how could they have quieted title in the purchaser? If that was a condition of finality of the sale or was a condition of obtaining rights, that the deed be delivered, and the sale was conducted in 2004, and Udall was decided in 2007, and before that time nothing had ever been delivered to the purchaser, how could they quiet title without the delivery of the deed under your theory? I understand your question. But the answer is that just statutorily, that transfer of the deed under Washington law requires a physical transfer of the deed before a foreclosure sale can be completed. And that didn't happen at Fairbanks, and that didn't happen here. And by the way, Your Honor, in a way I understand what you're asking, and I understand the importance of it. But here's the problem. This 362 is a preliminary prospective motion regarding relief from stay. And if the movement, the appellant in this case, wanted to, the appellant could have filed an adversary proceeding, objected to the plan, filed a motion that's a full-blown motion inside the bankruptcy court. They didn't need a full adjudication on the merits at 362 as a discretionary act on behalf of the judge, and Judge Doar made a discretionary ruling, and it was we're not granting relief from stay. That didn't foreclose the rights of the appellant to come and bring some other action or negotiate with my client or, you know, work something else out. I mean, that's just the way that process works. They filed a notice of appeal. So I think they continued to pursue their rights. Has the plan been confirmed? Yes, Your Honor, the plan's been confirmed, and I provided the court yesterday with a supplemental briefing, or not briefing, but supplemental documents relating to that. The plan was just confirmed on June the 9th. I would have gotten it to the court quicker, but unfortunately my father fell ill in Iowa, and so I had to leave for about a week, and so I'm sorry. I apologize for the sort of last-minute filing on my part in regard to that. However, yes, the plan's been confirmed, and my client is moving forward. We're moving forward to liquidate the 401K to be able to pay the bank off. It's my understanding that the buyer's been refunded all his money, and so everything's sort of back to square one. I'm sorry, I didn't hear what you said about the buyer's money. It's my understanding that the buyer's now been refunded money. Whatever proceeds were given to the trustee were given back to the buyer, Mr. Goodstein's client. That's where the case stands right now in regard to the payment or for the purchase price of the property. So where we stand now is a confirmed plan. The bank did not object to the plan. They are to be paid off pursuant to the liquidation of my client's 401K. But counsel, the bank lost any interest when it got paid by the trustee who took the bid. In other words, it was Mr. Goodstein's client who is the one that has any interest in avoiding the confirmation, objecting. He's the one that holds the rights, right, after the sales. That's not true, Your Honor. When the money gets transferred to the trustee, the trustee holds that in escrow, and then uses that money to pay the bank. And so what happened in our case is we filed the bankruptcy, and that stopped the bank or the foreclosure trustee from transferring the money to the bank. If that transfer had happened, if the foreclosure trustee paid the bank, that would be violative of the automatic stay. So my understanding is, and Mr. Goodstein can correct me if I'm wrong, is that all that money was then transferred back to his client. Let me ask you. Which is a good result, I think, in the big picture. In this case, trying to figure out who had a dog in the hunt in the Udall case and others. As I understand it, counsel, is it right that it was a battle between the bidder, the successful bidder, and the trustee in the bank, but that the borrower didn't make any objections. I mean, the homeowner in Udall or the property owner wasn't involved in the dispute at all. Is that right? I'm pulling up Udall right now to look at that just really quickly. I've got some highlights here. That is correct, Your Honor. That is in the page 885 to 886 where it describes how that went down. And that is correct, Your Honor. Anything else, Mr. Smith? No, Your Honor. I think that completes my argument. What I'd say is that, again, I think that Judge Doar made a discretionary ruling. This is a de novo review, and I think the ruling was correct. And if Mr. Goodstein's client had some claim, I understand that they appealed the relief from stay, but while that was pending, Mr. Goodstein's client could have filed an adversary proceeding or objected to claim or filed a claim within the bankruptcy court itself. So we would ask that the court affirm the lower court's ruling regarding denial of relief from stay. Thank you. Thank you. All right. Mr. Goodstein? Mr. Goodstein, if you could, before you make remarks, I'm concerned now about the status of whether or not this has been mooted by confirmation and whether your client still has any interest in the outcome of this litigation if they've been paid all the money that they allegedly paid at the sale. Right. Me too. I mean, what if we were to reverse this order? What would be the impact of that given the confirmation of the plan? Although I guess you could still appeal confirmation maybe. I don't know. But go ahead. Well, I think there's two questions, the money flow and the confirmation. And the money flow in this case was that my client, before the stay occurred, paid the purchase price to the trustee on the courthouse steps. And the trustee held that money for months. That's my client's money. And then at some point, I believe Mr. Smith and the trustee decided to mitigate the debtor's damages or my client's damages by directing a refund of the money. But nonetheless, my client was out $245,000 of his company's dollars for months. Did your client get the money, though? I mean, you said that they directed it. Forget about the damages right now. I'm interested about the principal. Did your client get back what they paid? Well, they got back the purchase price, but they have not received obviously the costs of attorney's fees and other incidental costs and the carrying charges of that money. But what I'm worried about is you raised a question concerning, by the appeal, concerning whether or not your client was the owner of the property and whether or not your client had made a colorable claim for stay relief to get the deed. And now the question is no longer about whether you own anything. It's a question of whether you're owed some more money for the interest or attorney's fees that have occurred. Those are entirely different questions. And so that's what I'm asking you to address. I don't believe that's the issue on the table at this point as far as the party is standing. If this court resolves this case as we believe it should, then we will repay the purchase price and be issued the deed. So even though the client has been confirmed and even though your client has at least been tendered, if not accepted, the purchase price, you contend that if we reverse the stay relief order, you're going to be the owner of the property and you're going to take possession and you're going to return the money to the selling trustee to pay the bank and then to keep the balance for the benefit of the debtor. Yes. All right. Did your client object to the confirmation of the plan? No. And I'd like to bring up another point in this order and its scope. Page 189 of our materials, this is 28 of transcript, the court self-describes its order as determining as a practical matter whether or not my client would become the owner of the property within the confines of this relief from stay motion, and the answer was no. Objection would have been futile, and we are still within time to appeal or seek a stay pending appeal of the confirmation of the plan, which did occur recently. Another thing that came up in my opponent's remarks was a number of ways that my client could participate in the bankruptcy, which underscores that my client has an interest in this property and even a continuing interest in this property. Finally, we'd like the court to announce a bright line rule that in the event of an unchallenged, valid pre-petition auction, cause exists for relief from stay so that the purchaser can finalize their sale. Well, we can only do that if there's a live controversy. Right. That's the problem. I just do it in the abstract, and I'm wondering if there's a live controversy. Well, if this court reverses the ruling, we're going to pay the money back to the trustee and receive a deed, and if the court would like to supplement the record with or have the record supplemented with that arrangement, that can be done. There is a live controversy here. Well, what we're faced with is what is the reality on the ground today, and on the ground today is you didn't stop the confirmation from going forward. You didn't get it stayed. They've confirmed the plan, and they've now tendered payment under the terms of the plan to you. So whether you accept it or not, what we have to deal with is what is the consequence of those events with respect to your client's claim. We haven't been tendered funds under a plan. I don't believe that anyone has been tendered funds under a plan. Mr. Smith stated that the funds have not been liquidated, and another aspect of this plan was it provided up to six months to sell the property, which I don't think has been undertaken either. So the plan hasn't been consummated, and if the court is approaching the issue of equitable mootness, this is a simple Chapter 13 case. There's one transaction to consummate this plan. This does not comprehend. It's not equitable mootness. It's not equitable mootness. It's constitutional mootness. It's whether you have any redressable claim that can be achieved, not in the abstract, but actually can we redress anything since confirmation of the plan has been accomplished. No stay has been sought. There's been a determination that the debtor has the ownership right in the property that he allowed the court to make evidently when it confirmed the plan. And what does that do to this appeal? We still have the ability to appeal or stay pending appeal. So the appeal survives. All right. Thank you. Thank you both for your arguments. This matter is submitted.
judges: BRAND, GAN, and CORBIT